OPINION OF THE COURT
Francois A. Rivera, J.
In this proceeding and application pursuant to Lien Law § 20, brought by a petition and order to show cause, petitioner Benson Park Associates LLC moves for an order directing the Department of Finance of the City of New York (DOF) to distribute to it the sum of $278,790.46, plus accrued interest, which had been deposited by it on September 12, 2006 in order to discharge a notice of mechanic’s lien in the sum of $276,000, which had been filed by respondent Mega Construction Corp. with the Kings County Clerk on August 3, 2006 against the real property known as 8700 Bay Parkway, block 6414, lots 42 and 47, in Brooklyn, New York.
Benson is the owner of the 8700 Bay Parkway property. Benson and Mega allegedly entered into two written contractual agreements, under which Mega performed work with respect to a construction project at the 8700 Bay Parkway property. On August 3, 2006, Mega filed a notice of mechanic’s lien dated July 28, 2006 against the 8700 Bay Parkway property. The notice of lien stated that Mega performed labor and furnished materials to Benson for the agreed price of $1,376,000 for the improvement of the 8700 Bay Parkway property. Mega, in the notice of lien, claimed a total amount of $276,000 for the sums allegedly due and owing to it for the work performed by it.
On September 12, 2006, Benson, in order to discharge the mechanic’s lien pursuant to Lien Law § 20, deposited the sum of $278,790.46 with the Kings County Clerk’s office. Benson has annexed a receipt evidencing this payment. The Kings County Clerk, thereafter, turned that money over to the DOF. No action to foreclose the mechanic’s lien was ever commenced by Mega. Instead, on November 26, 2006, Mega filed an action at law against Benson in the Supreme Court, Richmond County, alleging a breach of contract claim and seeking payment in the sum of $276,100, with interest thereon. By a decision and order dated *1016 January 22, 2008, Justice Joseph J. Maltese granted a motion by Mega for a default judgment against Benson in the Richmond County action, and an inquest to ascertain Mega’s damages will be conducted.
Since Mega has elected to proceed by an action at law and never brought an action to foreclose its mechanic’s lien, Benson, by its instant application, now seeks the return of the sum of $278,790.46, plus accrued interest, which it had deposited with the Kings County Clerk and which is presently being held by the DOF. Mega opposes Benson’s application.
In addressing Benson’s application, the court notes that Lien Law § 20, in pertinent part, provides:
“A lien . . . may be discharged after the notice of lien is filed at any time before an action is commenced to foreclose such lien, by depositing with the county clerk, in whose office the notice of lien is filed, a sum of money equal to the amount claimed in such notice, with interest to the time of such deposit.”
Here, it is undisputed that Benson discharged Mega’s lien by depositing with the Kings County Clerk the sum of $278,790.46 before any action to foreclose the lien was filed by Mega. The effect of Benson’s deposit was to discharge the lien upon the 8700 Bay Parkway property and to shift it to the fund, i.e., to substitute the lien on the real property with a lien on the money (see LaPointe v J.T.T. Contrs., 153 AD2d 880, 881 [1989]; Harlem Plumbing Supply Co. v Handelsman, 40 AD2d 768 [1972]; Frank Salz & Sons v Lehr Constr. Corp., 124 Misc 2d 790, 792 [1984]).
Lien Law § 19 (2), in pertinent part, provides:
“A lien [for a private improvement] may be discharged as follows: . . .
“(2) By failure to begin an action to foreclose such lien or to secure an order continuing it, within one year from the time of filing the notice of lien . . . .”
Thus, under Lien Law § 19 (2), in order to prevent the discharge of the lien on the deposit, the lienor is required to either commence an action to foreclose the lien or secure an order continuing the lien within one year after the filing of the notice of lien (see Bianchi Constr. Corp. v D’Egidio, 165 Misc 2d 973, 976 [1995]; Frank Salz & Sons, 124 Misc 2d at 793). If the lienor fails to take either of these two courses of action within the one-year time period, the lien lapses and is discharged by *1017 the expiration of time and operation of law (see Matter of Standard Tile Co., Inc. v OMara, 256 App Div 1096 [1939], rearg granted 257 App Div 834 [1939]; Matter of Thirty-fifth St. & Fifth Ave. Realty Co., 121 App Div 625, 626 [1907]).
Lien Law § 17 similarly provides:
“No lien . . . shall be a lien for a longer period than one year after the notice of lien has been filed, unless within that time an action is commenced to foreclose the lien, and a notice of the pendency of such action ... is filed with the county clerk of the county in which the notice of lien is filed ... or unless an extension to such lien ... is filed . . . within one year from the filing of the original notice of lien, continuing such lien.”
The provisions of Lien Law §§17 and 19 in regard to the continuing and extinguishing of liens apply to liens discharged by deposit (see Lien Law §§ 17, 19). Here, the records of the Kings County Clerk (which have been submitted by Benson) reflect that since the filing of the notice of lien on August 3, 2006 and its discharge by the cash deposit on September 12, 2006, nothing has been entered therein to date affecting Mega’s lien. Thus, it has been established that Mega never commenced an action to foreclose its mechanic’s lien, nor did it ever seek an order continuing it, within one year from the time of filing the notice of lien, as was required in order to prevent its hen against Benson’s cash deposit from lapsing. Consequently, Mega’s notice of mechanic’s lien against Benson’s cash deposit has become discharged by operation of law, pursuant to Lien Law § 19 (2) (see also Lien Law § 17; Matter of Thirty-fifth St. & Fifth Ave. Realty Co., 121 App Div at 626).
With respect to the right of a depositor to the return of its cash deposit upon the discharge of a mechanic’s lien, Lien Law § 20 provides:
“A deposit of money made as prescribed in this section shall be repaid to the party making the deposit . . . upon the discharge of the liens against the property pursuant to law . . . An order for the surrender of such moneys to the . . . depositor may be made by any court of record having jurisdiction of the parties. If no action is brought in a court of record to enforce such lien, such order may be made by any judge of a court of record. If application for such order is made ... by the depositor then [it shall be] on notice to the lienor.”
*1018 The term “property” contained in Lien Law § 20 necessarily refers to the cash deposit, and the discharge of the lien against the cash property pursuant to Lien Law § 19 (2) falls squarely within the meaning of “discharge . . . pursuant to law” contained in Lien Law § 20 (see Frank Salz & Sons, 124 Misc 2d at 793). Therefore, since Mega’s notice of mechanic’s lien against Benson’s cash deposit has lapsed and become discharged by operation of law pursuant to Lien Law § 19 (2), the unambiguous language of Lien Law § 20 mandates that the money be repaid to Benson, who made the deposit (see id. at 794).
Mega, however, in opposition to Benson’s order to show cause, argues that this proceeding is defective and must be dismissed because the petition is verified by Benson’s attorney, rather than by an officer of Benson. Mega contends that, pursuant to CPLR 3020 (d) (3), a petition may be verified by an attorney only if the party is a foreign corporation, or is not in the county where the attorney has his or her office.
Mega’s contention is devoid of merit. CPLR 3020 (d) (3) also expressly permits a petition to be verified by an attorney “if all the material allegations of the pleading are within the personal knowledge of . . . the attorney.” Benson’s attorney, in his verification, specifically states that he has personal knowledge of all of the material allegations of the petition. Additionally, in his reply affirmation, Benson’s attorney specifies that he acquired personal knowledge of all of the material allegations of the petition from the public records and Kings County Clerk’s records, which are annexed to the petition.
In any event, only in a few instances is verification of a petition mandatory, and it is not mandatory on an application, pursuant to Lien Law § 20, for an order to surrender monies to a depositor upon the discharge of a lien (see CPLR 3020 [a]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3020:5, at 291). Thus, Benson’s petition was not, in any way, defective.
Mega additionally contends that the order to show cause is not supported by any acceptable allegations of fact. This contention also lacks merit. The petition specifically sets forth the relevant factual assertions upon which Benson predicates its present claim for relief.
Mega further asserts that Benson first notified it, in papers submitted in opposition to its motion for a default judgment in the Richmond County action, that it had deposited the sum of $278,790.46 with the Kings County Clerk. In support of this as *1019 sertion, Mega has submitted the sworn affidavit of Carmine Castellano, its president, who attests that he learned for the first time that Benson had filed a cash deposit sometime after February 8, 2007, when Benson’s attorney asserted this in its opposition papers to Mega’s motion for a default judgment in the Richmond County action. He also states that he has diligently searched Mega’s records and found that no prior notice of the bond was received by Mega. Mega argues that because notice of the bonding of the lien was not served upon it in a timely fashion, it is entitled to proceed to foreclose on the cash bond.
Lien Law § 20, however, does not require the depositor to provide the notice to the lienor that the lien has been discharged by its deposit of a sum of money equal to the amount claimed in the notice of lien, with interest to the time of such deposit. Rather, Lien Law § 20 specifies that after the deposit is made by depositing this money with the county clerk, and the lien is discharged thereby, “the county treasurer or any other officer with whom the money is deposited shall, within ten days thereafter, send a notice by mail to the lienor, at the address given in the lien, that such lien has been discharged by deposit.”
Mega, though, has submitted a letter dated December 17, 2007 from the Kings County Clerk’s office, which states that “it does not appear that written notice of a September 12, 2006 deposit to discharge a mechanic’s lien was provided by [its] office to the lienor in connection with the [instant] matter.” However, the mere fact that Mega may not have received written notice that its lien was discharged by a cash deposit is without moment. The purpose of discharging a lien by the deposit of money with the county clerk is to relieve the real property from the lien, so that it may be freely alienated by the owner (see White Plains Sash & Door Co. v Doyle, 262 NY 16, 19 [1933]; Harlem Plumbing Supply Co., 40 AD2d at 768; Frank Salz & Sons, 124 Misc 2d at 792). The deposit simply takes the place of the real property and becomes the subject of the lien (see Harlem Plumbing Supply Co., 40 AD2d at 768; Frank Salz & Sons, 124 Misc 2d at 792). The action brought to foreclose the lien, thus, becomes “an action to test the validity of the lien, had it not been discharged, and, if found valid, to procure a judgment upon the undertaking, rather than a judgment of foreclosure against the real estate” (White Plains Sash & Door Co., 262 NY at 19-20).
Therefore, Benson’s cash deposit to discharge Mega’s lien merely changed the subject of Mega’s lien from the 8700 Bay *1020 Parkway property to the $278,790.46 deposited (see LaPointe, 153 AD2d at 881; Harlem Plumbing Supply Co., 40 AD2d at 768; Frank Salz & Sons, 124 Misc 2d at 792). It did not, in any manner, alter the requirements of Lien Law § 19 (2) (see Matter of Thirty-fifth St. & Fifth Ave. Realty Co., 121 App Div at 626; Frank Salz & Sons, 124 Misc 2d at 793-794). Regardless of whether Mega’s mechanic’s lien was held against the real property or was held against the cash deposit substituted for the real property, the lien had lapsed because it had not been extended by order and no action to foreclose upon it was begun within one year after the notice of lien was filed (see Matter of Standard Tile Co., Inc., 256 App Div at 1096; Matter of Thirty-fifth St. & Fifth Ave. Realty Co., 121 App Div at 626; Frank Salz & Sons, .124 Misc 2d at 793-794).
Mega was aware, at all times, of the date upon which it had filed the notice of lien. Lien Law § 19 (2)’s requirement that Mega bring an action to foreclose its lien or obtain an extension within one year from that date to avoid a discharge of its lien applied regardless of whether the lien had remained filed as against the 8700 Bay Parkway property or had been substituted by Benson’s cash deposit. Consequently, Mega has not been prejudiced, in any respect, by its failure to receive notice of Benson’s bonding of its lien.
Mega also argues that since it had filed the Richmond County action which sought to recover payment for the labor, which is the subject of the notice of lien, and has now obtained a default judgment in the Richmond County action, it should be permitted to enforce that judgment as a lien against this cash deposit and Benson should not be permitted to remove this cash fund. Mega’s argument must be rejected. As discussed above, Mega’s lien has lapsed, and it was, thus, relegated to its contractual remedy (which it has obtained in the Richmond County action) rather than an equitable remedy (see Matter of Crispino v Musialkiewicz, 9 Misc 2d 409, 411-412 [1958]).
Mega’s commencement of an action at law and the fact that it obtained a default judgment in that action does not preclude the payment of the cash deposit back to Benson (see Frank Salz & Sons, 124 Misc 2d at 794; Meszaros v Indiveri, 36 Misc 2d 632, 633-634 [1962]; Matter of Whale Cr. Iron Works v New York & Queens Elec. Light & Power Co., 73 Misc 242, 244 [1911]). Mega’s lapsed lien has no impact upon Mega’s claim for payment of the debt specified in the notice of lien for which it has now obtained a default judgment in its breach of contract action *1021 against Benson personally (see Lien Law § 17; Noce v Kaufman, 2 NY2d 347, 351-352 [1957]; Bianchi Constr. Corp., 165 Misc 2d at 977; Frank Salz & Sons, 124 Misc 2d at 794; Meszaros, 36 Misc 2d at 633-634; Matter of Whale Cr. Iron Works, 73 Misc at 244). Mega cannot revive a lapsed lien in order to provide it with a source of funds upon which to enforce its judgment on a breach of contract claim. “Once the lien has lapsed any order purporting to continue such lien is ineffective” (Hanson Heating & Plumbing v Stout, 88 Misc 2d 241, 242 [1976]; see also Lien Law §§ 17, 19 [2]).
Thus, Mega does not have any claims against Benson’s cash deposit based upon its lapsed lien (see Frank Salz & Sons, 124 Misc 2d at 794). Mega cannot transform its lapsed lien into an order of attachment and utilize it as a basis to attach Benson’s cash deposit to enforce its unsecured judgment (see generally Credit Agricole Indosuez v Rossiyskiy Kredit Bank, 94 NY2d 541, 551 [2000]). Nor can it utilize the lapsed lien as a means to levy on these funds and shortcut the procedures for enforcement of money judgments pursuant to CPLR article 52. Therefore, an order directing the return of the $278,790.46 deposit, plus accrued interest, to Benson, pursuant to Lien Law § 20, is warranted (see Matter of Thirty-fifth St. & Fifth Ave. Realty Co., 121 App Div at 627-628; Frank Salz & Sons, 124 Misc 2d at 794).
Accordingly, Benson’s motion for an order directing the return to it of its September 12, 2006 deposit of the sum of $278,790.46, plus accrued interest, pursuant to Lien Law § 20, is granted.
[Next page is 1101]